IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01037-RMR-KAS

RMSM LTD, formerly known as Rotating Mechanical Solutions Corp.,
RYAN MCGUIRE, and
SCOTT MCGUIRE,

      Plaintiffs and Counterclaim Defendants,

v.

INDUSTRIAL SERVICE SOLUTIONS LLC,

      Defendant and Counterclaim Plaintiff,
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendant's **Partial Rule 12(b)(6) Motion to Dismiss** [#16] ("Defendant's Motion") and Plaintiffs' **Partial Rule 12(b)(6) Motion to Dismiss** [#48] ("Plaintiffs' Motion"). The parties filed Responses [#33, #53] in opposition to each other's Motions [#16, #48], and Replies [#52, #54] in support of their own. The Motions [#16, #48] have been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Orders Referring Motions* [#19, #50]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that both Motions [#16, #48] be **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

## I.    Background

      Plaintiffs Ryan McGuire and Scott McGuire started a company called Rotating Mechanical Solutions Corporation in 2010, which is now known as RMSM Ltd. ("RMSM").

*Compl.* [#4] at 2. RMSM is a Colorado corporation with its principal place of business in Littleton, Colorado. *Id.* at 5; *Corp. Disclosure Statement* [#14].

In 2022, the McGuires sold RMSM's assets to Industrial Service Solutions, LLC ("ISS"). *Compl.* [#4] at 2. The McGuires agreed to become ISS employees and operate RMSM's assets to "generate revenue for ISS." *Id.* ISS is a Delaware limited liability company with its principal place of business in Texas. *Am. Answer and Countercls.* [#27-2] at 119; *Corp. Disclosure Statement* [#13]. ISS owns and operates a business in Brighton, Colorado. *Am. Answer and Countercls.* [#27-2] at 10.

The terms of the 2022 sale were memorialized in the following six documents that Plaintiffs reference and quote throughout the Complaint [#4]:

- Employment Agreement between ISS and Ryan[1] McGuire (the "Ryan[1] Emp. Agreement"); *Compl.* [#4] at 8-9; *Def.'s Ex. A, Ryan Emp. Agreement* [#17];

- Employment Agreement between ISS and Scott McGuire (the "Scott Emp. Agreement"); *Compl.* [#4] at 8-9; *Def.'s Ex. B, Scott Emp. Agreement* [#17];

- Asset Purchase Agreement between ISS and RMSM (the "APA"); *Compl.* [#4] at 10-12; *Def.'s Ex. C, APA* [#17];

- Noncompetition Agreement between ISS and RMSM (the "RMSM Non-Compete"); *Compl.* [#4] at 12-14; *Def.'s Ex. D, RMSM Non-Compete* [#17];

- Noncompetition Agreement between ISS and Ryan McGuire (the "Ryan Non-Compete"); *Compl.* [#4] at 12-14; *Def.'s Ex. E, Ryan Non-Compete* [#17];

---

[1] Because the individual Plaintiffs share a last name, the Court will identify the individual Plaintiffs by first name when necessary and means no disrespect in doing so.

- Noncompetition Agreement between ISS and Scott McGuire (the "Scott Non-Compete"); *Compl.* [#4] at 12-14; *Def.'s Ex. F, Scott Non-Compete* [#17].

Plaintiffs allege that, pursuant to the Employment Agreements and the APA, Plaintiffs were entitled to bonuses if their performance after the acquisition met certain "financial metrics." *Compl.* [#4] ¶ 5. Specifically, if Plaintiffs' Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA") exceeded certain thresholds provided in the APA, the McGuires were entitled to an "Earn-Out Payment" (hereinafter, "earn-out") and annual bonuses. *Id.* ¶ 42.

Plaintiffs were first eligible to receive an earn-out in 2022. As to that earn-out, the APA provides, in relevant part:

> (B) If the 2022 Adjusted EBITDA exceeds $239,000 (the "2022 Baseline Adjusted EBITDA"), then the Earn-Out Payment with respect to the 2022 Earn-Out Period (the "2022 Earn-Out Payment") shall, subject to Section 3(iii)(D) below, be an amount equal to: (i) the amount by which the 2022 Adjusted EBITDA exceeds the 2022 Baseline Adjusted EBITDA multiplied by (ii) three and one-quarter (3.25); provided, however, that in no event shall the 2022 Earn-Out Payment exceed eight hundred thousand dollars ($800,000). If the 2022 Adjusted EBITDA is less than or equal to the 2022 Baseline Adjusted EBITDA, then no Earn-Out Payment shall be due or payable with respect to the 2022 Earn-Out Period.

*Def.'s Ex. C, APA* [#17] at 18 ¶ 3(iii)(B); *Compl.* [#4] ¶ 43. In 2023, Plaintiffs were eligible to receive an earn-out as follows:

> (C) If the 2023 Adjusted EBITDA exceeds $263,000 (the "2023 Baseline Adjusted EBITDA"), then the Earn-Out Payment with respect to the 2023 Earn-Out Period (the "2023 Earn-Out Payment"; the 2022 Earn-Out Payment and the 2023 Earn-Out Payment are each referred to individually as an "Earn-Out Payment" and collectively as the "Earn-Out Payments") shall, subject to Section 3(iii)(D) below, be an amount equal to: (i) the amount by which the 2023 Adjusted EBITDA exceeds the 2023 Baseline Adjusted EBITDA multiplied by (ii) three and one-quarter (3.25). If the 2023 Adjusted EBITDA is less than or equal to the 2023 Baseline Adjusted EBITDA, then no Earn-Out Payment shall be due or payable with respect to the 2023 Earn-Out Period.

*Def.'s Ex. C*, *APA* [#17] at 18 ¶ 3(iii)(C); *Compl.* [#4] ¶ 44. The APA provides that Defendant is not required to pay any earn-out if Plaintiffs violate their respective Non-Competes. *Def.'s Ex. C*, *APA* [#17] at 19 ¶ 3(iii)(E); *Compl.* [#4] ¶ 45. Further, the APA provides that, upon any such violation, Plaintiffs are jointly and severally liable for "the immediate return of the full amount of any Earn-Out Payments which were previously paid to Seller." *Def.'s Ex. C*, *APA* [#17] at 19 ¶ 3(iii)(E); *Compl.* [#4] ¶ 45.

> Regarding the McGuires' annual bonuses, the Employment Agreements provide:
>
> Conditioned upon (i) your remaining employed with ISS on the date of payment and (ii) the achievement of management incentive targets and at the discretion of the Management Committee of ISS #2, LLC, you shall also be paid an end of year bonus ("Annual Bonus") in accordance with ISS' Annual Management Incentive Plan ("MIP") with a target bonus set at Twenty Percent (20%) of the Base Salary paid, pro-rated for actual months worked in 2022. . . . Any bonus payout that is earned will be pro-rated and paid if you leave employment of the company, prior to the actual payment, unless you voluntarily resign or are terminated for cause.

*Compl.* [#4] ¶ 33; *Def.'s Ex. B*, *Scott Emp. Agreement* [#17] at 13 ¶ 2(b). Plaintiffs allege that the "management incentive targets" corresponded with the APA's EBITDA thresholds. *Compl.* [#4] ¶ 34. Plaintiffs further allege that they "had to trust that ISS was properly doing the accounting regarding whether they earned their bonuses." *Id.* ¶ 64. The Employment Agreements also provided that the McGuires would receive 160 hours of paid vacation time, which would become "earned, vested, and determinable" on the first day of each year. *Id.* ¶ 36.

Plaintiffs allege that, in 2022, their EBITDA was $927,037, so under the terms of APA Paragraph 3(iii)(B), they earned the full $800,000 earn-out. *Compl.* [#4] ¶¶ 68-73. ISS also paid the McGuires annual bonuses in the amount of $23,333.33 each. *Id.* ¶ 77.

Plaintiffs allege that, in 2023, ISS made "drastic changes to undermine" Plaintiffs' business so that ISS did not have to pay Plaintiffs additional bonuses. *Id.* ¶ 80. Plaintiffs

allege that ISS (1) intentionally diverted business away from Plaintiffs, (2) damaged Plaintiffs' reputation and sabotaged Plaintiffs' relationships with their customers and vendors, (3) purchased its own assets to do the same field service work as RMSM, (4) artificially inflated Plaintiffs' expenses, (5) forced Plaintiffs to transition to faulty accounting software, and (6) fired Plaintiffs' online presence manager. *Id.* at 18-38.

Plaintiffs allege that, because of ISS's efforts, their EBITDA dropped to $35,269.92 in 2023. Thus, they would not receive an earn-out under APA Paragraph 3(iii)(C). *Id.* ¶ 223. After Plaintiffs demanded an accounting from ISS and challenged certain accounting errors, an ISS executive admitted that the original 2023 EBITDA figure was "off" by $84,730.03. *Id.* ¶ 237. Nevertheless, because even the corrected EBITDA did not exceed the threshold provided in Paragraph 3(iii)(C), ISS did not pay Plaintiffs the 2023 earn-out. *See id.*

Accordingly, Plaintiffs initiated an arbitration concerning the earn-out, as required by the APA's arbitration clause. *Id.* ¶¶ 14 n.14, 242. Plaintiffs allege that, after they initiated the arbitration, ISS terminated the McGuires' employment. *Id.* ¶ 245. Plaintiffs further allege that ISS failed to pay out the McGuires' accrued vacation time. *Id.* at 41-44.

Plaintiffs allege that, during the initial arbitration proceedings, ISS took the position that Plaintiffs had violated their respective Non-Competes, and therefore, were required to return the $800,000 earn-out they received in 2022. *Id.* ¶ 14 n.2.

Plaintiffs now assert the following ten causes of action:

- Claim 1: Declaratory Judgment (controlling non-competition provision); *Compl.* [#4] at 45-48;

- Claim 2: Declaratory Judgment (enforceability of Non-Competes); *id.* at 48-50;

- Claim 3: Declaratory Judgment (enforceability of APA Paragraph 3(iii)(E)); *id.* at 51-53;

- Claim 4: Declaratory Judgment (Employment Agreements Paragraph 2(B)); *id.* at 53-55;

- Claim 5: Failure to pay wages in violation of the Colorado Wage Claim Act ("Colorado Wage Claim Act"), Colo. Rev. Stat. § 8-4-101 *et seq.*; *id.* at 55-58;

- Claim 6: Wrongful termination in violation of the Colorado Wage Claim Act; *id.* at 58-61;

- Claim 7: Common law retaliatory discharge; *id.* at 61-62;

- Claim 8: Violation of Colorado's Equal Pay for Equal Work Act (the "Equal Pay Act"), Colo. Rev. Stat. § 8-5-101 *et seq.*; *id.* at 62-63;

- Claim 9: Breach of contract and breach of the covenant of good faith and fair dealing (Employment Agreements); *id.* at 63-66;

- Claim 10: Breach of contract and breach of the covenant of good faith and fair dealing (APA); *id.* at 66-68.

Plaintiffs assert that because all their claims besides Claims 3 and 10 are "not subject to arbitration," they "plan to withdraw their claim in the arbitration so that all of the parties' claims and defenses can be heard in this lawsuit." *Id.* at 5, ¶ 14 n.2.

After the filing of the operative complaint, Defendant asserted counterclaims against Plaintiffs. Defendant alleges that, pursuant to their respective Non-Competes, Plaintiffs were prohibited from

> directly or indirectly . . . engag[ing] in, assist[ing] or hav[ing] any active interest in any business that is then actively engaged in (i) vibration analysis, dynamic balancing, preventive maintenance, predictive maintenance, condition monitoring, electrical testing and diagnostics, air

compressor sales and service, electric motor sales and service, laser shaft alignment, or (ii) any business in which the Company participated on or prior to the Effective Date or that otherwise competes with or is similar in concept to the business conducted by the Buyer Group on the Effective Date or at any time during the term of this covenant[.]

*Am. Answer and Countercls.* [#27-2] at 122 ¶ 35; *Pls.' Ex. A* [#49] at 3 ¶ 1.1; *Pls.' Ex. B* [#49] at 9 ¶ 1.1; *Pls.' Ex. C* [#49] at 9 ¶ 1.1.[2] The Plaintiffs' Non-Competes expire August 15, 2027. *See id.* ¶ 1. Defendant alleges that, in the APA, Plaintiffs "represented and warranted that RMSM has no subsidiaries or affiliates." *Am. Answer and Countercls.* [#27-2] at 123 ¶ 41; *Pls.' Ex. D* [#49] at 26 ¶ 12(C). Further, "Plaintiffs represented that they did not misstate or fail to state a material fact." *Am. Answer and Countercls.* [#27-2] ¶ 44; *Pls.' Ex. D* [#49] at 31 ¶ 12(W).

However, Defendant alleges that Plaintiffs "ran a separate business called Industrial Electric and Machine Corp. ("IEM") that provided services that competed with [Defendant's] services." *Am. Answer and Countercls.* [#27-2] at 118 ¶ 4. Defendant alleges that the McGuires have been on IEM's board of directors since 2017. *Id.* at 124 ¶¶ 47-50. Defendant alleges, based on a description on IEM's website, that IEM engages in business that competes with Defendant. *Id.* at 124-25 ¶¶ 52, 55. Defendant alleges that Plaintiffs "knowingly and intentionally did not disclose IEM" during the acquisition. *Id.* at 118 ¶ 4. Accordingly, Defendant asserts the following counterclaims in connection with Plaintiffs' alleged breaches of their Non-Competes:

- Counterclaim 1: Breach of contract (Non-Competes); *id.* at 128-30;

- Counterclaim 2: Breach of the duty of loyalty; *id.* at 131;

- Counterclaim 3: Fraudulent inducement; *id.* at 132-35;

---

[2] To the extent that any of Plaintiffs' corresponding contract provisions contain minor syntax and grammar discrepancies, the Court finds that they are immaterial to the issues at hand.

- Counterclaim 4: Breach of contract (APA); *id.* at 135-36;

- Counterclaim 5: Negligent misrepresentation; *id.* at 136-39.

Defendant asserts that, under Paragraph 3(iii)(E) of the APA, the McGuires and RMSM are "jointly and severally liable to return" the $800,000 earn-out already made to RMSM in 2022. *Id.* at 126 ¶¶ 61-63.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a

Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

"Typically, when deciding motions to dismiss, the district court cannot look beyond the four corners of the complaint." *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025). "If the court considers evidence outside the pleadings, it must convert the motion to dismiss into a motion for summary judgment." *Id.* (internal quotation marks omitted); *see also* FED. R. CIV. P. 12(d). However, courts may consider documents that plaintiffs (1) attach to their complaint; (2) incorporate by reference in their complaint; or (3) refer to in their complaint, if they are central to the complaint and indisputably authentic. *Fuqua*, 157 F.4th at 1297. "A document is incorporated into a complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Blackmore v. Carlson*, 574 F. Supp. 3d 1012, 1024 n.22 (D. Utah 2021) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

### III.    Analysis

#### A.    Defendant's Motion [#16]

Defendant moves to dismiss Plaintiffs' Claims 1-4 and 6-8 in whole and Claim 5 in part. *Def.'s Motion* [#16] at 15. In response, Plaintiffs voluntarily dismissed Claim 4. *Response* [#33] at 2[3] n.1. Accordingly, the Court will not consider Defendant's arguments concerning Claim 4.

---

[3] Citations to page numbers refer to the numbering stamped at the top of each page by the Court's CM/ECF docketing system, not to the filing's original page numbering.

1.    **Choice of Law**

The Court notes that this case presents a critical preliminary question that neither party has affirmatively raised or comprehensively briefed: what law applies to their dispute? Apart from Plaintiffs' claims for declaratory relief, (the availability of which invokes federal law), the rest of the claims subject to the instant Motion [#16] arise under Colorado law. *See Compl.* [#4] at 55-61 (asserting two claims under the Colorado Wage Claim Act), 58-61 (asserting a common law claim pursuant to Colorado's public policy), 62-63 (asserting a claim under Colorado's Equal Pay Act). However, the subject agreements contain choice of law provisions applying Delaware law.[4] Therefore, the Court must address choice of law before reaching the parties' other arguments.

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, the Court follows Colorado law, which adopts the principles set forth in the Restatement (Second) of Conflict of Laws. *Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783, 785 (10th Cir. 1984). Under § 187(2) of the Restatement, the law of the state chosen by the parties will be applied, unless the plaintiff demonstrates that (1) the state chosen has no substantial relationship to the parties or the transaction, or there is no other reasonable basis for the parties' choice; or (2) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the

---

[4] Although Plaintiffs do not explicitly reference these clauses in the Complaint [#4], the agreements are mentioned and are clearly central to many of Plaintiffs' claims. On a Rule 12(b)(6) motion to dismiss, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025). Thus, the Court may consider the agreements, including the choice of law provisions therein.

chosen state in the determination of the particular issue and which, under § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. RESTATEMENT (SECOND) OF CONFLICT OF L., § 187(2) (A.L.I. 1971).

The APA includes a choice of law clause that states: "This Agreement and the agreements executed in connection herewith shall be governed by the laws of the State of Delaware (regardless of the laws that might otherwise govern under applicable principles of conflicts of law of the State of Delaware) as to all matters including, but not limited to, matters of validity, construction, effect, performance and remedies." *Def.'s Ex. C, APA* [#17] at 28 ¶ 16. The provision is broad, applying Delaware law to "all matters" arising under the APA and to "the agreements executed in connection herewith." *See Cherry Creek Mortg., LLC v. Jarboe*, No. 18-CV-00462-KLM, 2021 WL 3710360, at *3 (D. Colo. Aug. 20, 2021).

Moreover, the Employment Agreements and the Non-Competes contain choice of law provisions similarly opting for the application of Delaware law. The Employment Agreements "shall be governed and construed in accordance with the laws of the State of Delaware, without regard to conflicts of law principles." *Def.'s Ex. A, Ryan Emp. Agreement* [#17] at 8 ¶ 8; *Def.'s Ex. B, Scott Emp. Agreement* [#17] at 14 ¶ 8. The Non-Competes "shall be governed by, construed, applied and enforced in accordance with the internal laws of the state of Delaware, and no doctrine of choice of law shall be used to apply any law other than that of Delaware." *Def.'s Ex. D, RMSM Non-Compete* [#17] at 40 ¶ 5; *Def.'s Ex. E, Ryan Non-Compete* [#17] at 46 ¶ 5; *Def.'s Ex. F, Scott Non-Compete* [#17] at 52 ¶ 5.

The Court finds that the APA's language, "all matters including, but not limited to, matters of validity, construction, effect, performance and remedies," is a broadening clause that expands the choice of law provision beyond mere matters of construction. *Compare Cherry Creek Mortg.*, 2021 WL 3710360, at *3 (analyzing choice of law provision with broadening clause "all matters relating hereto"), *with Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 492 (D. Utah 2017) (analyzing choice of law provision applying only to matters of contract interpretation without broadening language). The Court finds that the APA's choice of law provision, in connection with the choice of law provisions of the related contracts, means that all matters arising under the agreements, including Plaintiffs' employment relationship with Defendant, must be adjudicated under Delaware law. *See Cherry Creek Mortg.*, 2021 WL 3710360, at *3 (concluding that the broadening clause "and all matters relating hereto" brings within the clause's scope not only matters of contract interpretation but also matters relating to the employment relationship more generally).

To the extent that the choice of law provisions in the Employment Agreements and Non-Competes are narrower than that of the APA, the Court finds that the parties intended for the broader choice of law provision to control. *Id.* at *5 ("The Tenth Circuit Court of Appeals has indicated that 'unambiguous . . . choice of law provisions in signed, bargained-for contracts' are to be mandatorily enforced." (quoting *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1223 (10th Cir. 2000))). The APA's plain language provides that Delaware law applies to "all matters" arising under it and "*the agreements executed in connection herewith*." *Def.'s Ex. C, APA* [#17] at 28 ¶ 16 (emphasis added). The APA explicitly references and binds the Plaintiffs to enter

noncompetition agreements and employment offer letters with Defendants, which suggests to the Court that those are the agreements "executed in connection herewith." *Id.* at 21 ¶¶ 5, 8. Thus, according to the APA, any of Plaintiffs' state law claims relating to the employment relationship with Defendant are governed by the laws of Delaware.

Having established the applicable law, the Court turns to the arguments asserted in Defendant's Motion [#16].

### 2.    Availability of Declaratory Relief (Claims 1, 2, and 3)

Plaintiffs seek declaratory judgment on three topics, asking the Court to declare: (1) the Ryan and Scott Non-Competes supersede any noncompetition provisions within the Ryan and Scott Employment Agreements; (2) any operative noncompetition provisions within the subject agreements are unenforceable under Colorado law; and (3) APA Paragraph 3(iii)(E) is invalid under either Colorado or Delaware law. *Compl.* [#4] at 45, 48-51. Defendant moves to dismiss the claims because they "are not independent and separable from the underlying claims, no forward-looking need exists to address Plaintiffs' damages, and a declaratory action will not settle the controversy." *Def.'s Motion* [#16] at 6.

As an initial matter, the Court notes that Claim 2 seeks unavailable relief. As previously discussed, Colorado law does not apply to the parties' dispute, including the enforceability of any noncompetition provisions in the subject agreements. Further, to the extent that Plaintiffs' Claim 3 seeks a declaration concerning the enforceability of the APA under Colorado law, that relief is likewise unavailable. Therefore, the Court **recommends** that the Motion [#16] be **granted**, that Plaintiffs' Claim 2 be **dismissed with prejudice**, and that Plaintiffs' Claim 3 be **partially dismissed with prejudice**, insofar as it seeks a

declaration under Colorado law. *See Cherry Creek Mortg.*, 2021 WL 3710360, at *7, *9 (dismissing claims for a declaratory judgment concerning which state's law applied as moot and dismissing claims for relief under the wrong state's substantive law with prejudice).

The Court now turns to the availability of declaratory relief concerning Claim 1 and the Delaware law component of Claim 3.

"Because declaratory judgment acts are procedural rules, 'federal law determines whether a district court may properly enter a declaratory judgment' in a diversity case." *Acuity v. Kinsale Ins. Co.*, 750 F. Supp. 3d 1229, 1242 (D. Colo. 2024) (quoting *Addison Ins. Co. v. Maynard*, 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2 (D. Colo. May 15, 2008)). The Declaratory Judgment Act allows a district court to "declare the rights and other legal relations of any interested party" in "a case of actual controversy" within the court's jurisdiction. 28 U.S.C. § 2201. The Supreme Court has "characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

The Declaratory Judgment Act "presents two separate hurdles for parties seeking a declaratory judgment to overcome." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, there must be an "actual controversy," which has been "equated to the Constitution's case-or-controversy requirement." *Id.* "'[C]ase of actual controversy' . . . refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "Article III has

long been interpreted as forbidding federal courts from rendering advisory opinions." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).

Once the court is satisfied that an "actual controversy" exists, a second hurdle must be overcome for a declaratory action to proceed. "[E]ven where a constitutionally cognizable controversy exists, the Act stipulates only that district courts 'may' — not 'must' — make a declaration on the merits of that controversy," and thus "district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Surefoot*, 531 F.3d at 1240. The Tenth Circuit has provided "substantial guidance" to district courts considering whether to hear a declaratory action. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

The *Mhoon* court identified five factors for district courts to consider: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Id.* at 983 (citations and internal quotations omitted). "Courts in this district have additionally looked to a sixth factor set forth in *Constitution Associates v. New Hampshire Insurance Co.*, 930 P.2d 556 (Colo. 1997)—whether the declaratory judgment action is 'independent of and separable from the underlying action.'" *Acuity*, 750 F. Supp. 3d at 1242 (quoting *Const. Assocs.*, 930 P.2d at 561). Further, courts in the Tenth Circuit have dismissed declaratory

judgment claims where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same action. *Id.* at 1243 (collecting cases).

Defendant argues that Plaintiffs' declaratory judgment claims "fail now that the parties' claims are in this Court and not in arbitration" because the claims for relief will be "resolved in this action." *Def.'s Motion* [#16] at 8. Defendant argues that Plaintiffs have not "identified in the Complaint any forward-looking need to address damages" or pleaded the "required immediacy" of an actual case or controversy. *Id.* at 8-9; *Reply* [#52] at 2-3.

### a.  Actual Controversy

The first claim for declaratory relief—that the Ryan and Scott Non-Competes supersede any noncompetition provisions within the Ryan and Scott Employment Agreements—does not present an actual controversy. Plaintiffs allege that there are noncompetition provisions in both the Employment Agreements and the Non-Competes. *Compl.* [#4] at 45-47. Plaintiffs allege that the Non-Competes, which the parties entered into later, contain the following integration clause:

> This Agreement embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein and may not be modified orally, but only by a writing subscribed by the party charged therewith . . . . This Agreement supersedes all prior agreements and understandings (whether oral or written) between the parties with respect to such subject matter.

*Compl.* [#4] ¶ 263. Plaintiffs allege that Defendant has taken the following legal positions: (1) the Non-Competes are enforceable; (2) Plaintiffs violated their Non-Competes; and (3) Defendant is entitled to repayment in the amount of $800,000 based on those violations. *Id.* ¶ 265. What Plaintiffs fail to allege, however, is whether Defendant disputes or has otherwise taken a contrary position on the question of whether the Non-Competes supersede any noncompetition provisions contained in the Employment Agreements.

While Plaintiffs allege that "there is an actual controversy between the parties and a bona fide dispute as to whether *the non-competes* are enforceable" and that "Plaintiffs have a justiciable question as to the existence or non-existence of various rights *under the non-competes*," *id.* ¶¶ 267-68 (emphases added), those allegations fall short of alleging an actual controversy as to the validity of any noncompetition provisions *in the Employment Agreements*.

True, "nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989). But an actual controversy does not exist where the parties do not dispute which agreement governs their dispute. *Cf. Airtex Mfg., LLLP v. Boneso Bros. Constr., Inc.*, No. 219CV02269EFMJPO, 2020 WL 4922192, at *12 (D. Kan. Aug. 21, 2020) ("[T]he parties vehemently contend whether the PO or the POA controls their legal relationship. Their significant legal interests depend on the resolution of this dispute. Accordingly, the Court may issue declaratory judgment as to which document is the real contract as this is an actual controversy.").

For this reason, Plaintiffs fail to allege an actual controversy as to their first request for declaratory relief. Accordingly, the Court **recommends** that Defendant's Motion [#16] be **granted** and Plaintiffs' Claim 1 be **dismissed without prejudice**.

In contrast, Plaintiffs have pleaded a live controversy with respect to their third request for declaratory relief—that APA Paragraph 3(iii)(E) is invalid under Delaware law. Plaintiffs plead that Defendant seeks to "claw back money that Plaintiffs earned and that it subsequently paid to Plaintiffs" based on their alleged violation of the Non-Competes.

*Id.* ¶ 285. Plaintiffs allege a contrary position: that APA Paragraph 3(iii)(E) is invalid under Delaware law. *Id.* ¶¶ 286, 287. Accordingly, Plaintiffs have established an actual controversy concerning the enforceability of APA Paragraph 3(iii)(E).

Defendant argues that any controversy between the parties is not immediate because Defendant has not sought "immediate" repayment of the 2022 earn-out and because Plaintiffs would only need to reimburse Defendant if Defendant's counterclaims are ultimately successful. *Reply* [#52] at 3. The Court is unpersuaded. By that tenuous logic, no justiciable controversy would exist in any case unless and until one side in the litigation was successful. A demand for repayment followed by a dispute over whether that repayment is owed creates sufficiently adverse legal interests such that an actual controversy exists between the parties. *See Columbian*, 650 F.3d at 1383 (citing *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.,* 968 F.2d 707, 711 (8th Cir.1992) for the proposition that "jurisdiction [was] present even though insured had not yet been sued with respect to several potential claims because insured 'had made a clear demand for payment of defense and indemnity costs' and insurer 'disputed those demands'").

### b.    Discretionary Considerations

Having established that Plaintiffs assert an actual controversy concerning the third claim for declaratory judgment, the Court turns to the second question informing the availability of declaratory relief. *Surefoot*, 531 F.3d at 1240.

Defendant argues that, even if the Court concludes that an actual controversy exists, the Court should dismiss Plaintiffs' declaratory judgment claim because it will "[b]e [r]esolved in this [a]ction" as part of the "substantive claims in the case." *Def.'s Motion* [#16] at 8; *Reply* [#52] at 5. The Court infers that the substantive claims "now before the

Court" refer to Defendant's breach of contract counterclaims. *Am. Answer and Countercls.*
[#27-2]. Plaintiffs argue that the Court may not consider the Defendant's counterclaims
when ruling on a Rule 12(b)(6) motion because the counterclaims are outside the
Complaint's four corners. *Response* [#33] at 8. Plaintiffs further argue that considering
the counterclaims would also be improper at this juncture "because it would flip the plaintiff
into the position of defendant on an issue that the plaintiff had initially raised." *Id.*

Courts in this circuit dismiss declaratory judgment claims where plaintiffs seek
declaratory relief that will be resolved by their other substantive claims. *See*, *e.g.*, *Acuity*,
750 F. Supp. 3d at 1243; *McArtor v. Valsoft Corp.*, No. 23-CV-136, 2023 WL 9958059, at
*6 (D. Wyo. Dec. 11, 2023) (dismissing declaratory judgment claim as duplicative of
breach of contract claim); *Golf Club, L.L.C. v. Am. Golf Corp.*, No. CIV-16-946-D, 2017
WL 1655259, at *2 (W.D. Okla. May 2, 2017) (same). Courts also routinely dismiss
declaratory judgment counterclaims that would resolve the same issues raised in the
complaint ("mirror image counterclaims"). *See Atl. Specialty Ins. Co. v. Midwest Crane
Repair, LLC*, No. 20-CV-04013-JAR-ADM, 2020 WL 5513594, at *4 (D. Kan. Sept. 14,
2020) (finding counterclaim for declaratory relief of nonliability duplicative of negligence
claim and comparative negligence affirmative defense); *see also Prograde Ammo Grp.
LLC v. Perry*, No. 14-cv-00884-PAB-MEH, 2015 WL 1064266, at *3 (D. Colo. Mar. 9, 2015)
(collecting cases in the intellectual property context). Although courts offer varying
rationales for dismissing such claims, there appears to be consensus that issuing
declaratory judgments that are duplicative of a plaintiff's other claims for relief would be a
poor use of judicial resources. *Cf.* FED. R. CIV. P. 12(f) ("The court may strike from a
pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").

However, the previously discussed decisions are not directly on point to the issue presented here: whether a plaintiff's claims for declaratory relief should be dismissed as duplicative of counterclaims later asserted by the defendant. The parties do not cite any case, and this Court is unaware of any, providing guidance on this question. Accordingly, the Court will turn to the *Mhoon* factors.

Where, as here, the Court is unaware of pending litigation in any other forum, the Court assumes that the first, second, and fifth *Mhoon* factors apply. *See Acuity*, 750 F. Supp. 3d at 1243; *Olave v. Am. Fam. Mut. Ins. Co., S.I.*, No. 21-cv-02908-CMA-NYW, 2022 WL 2817630, at *4 (D. Colo. July 18, 2022)*.* Those factors are (1) whether a declaratory action would settle the controversy, (2) whether it would serve a useful purpose in clarifying the legal relations at issue, and (5) whether there is an alternative remedy which is better or more effective. *Mhoon*, 31 F.3d at 983.

First, resolving Plaintiffs' remaining declaratory judgment claim would not fully settle the controversy among the parties. Plaintiffs assert causes of action unrelated to the subject matter of the declaratory judgment claims, including retaliatory discharge, breach of contract, and breach of the covenant of good faith and fair dealing. *Compl.* [#4]. Thus, this factor weighs against adjudicating the declaratory judgment claim.

However, as to the second *Mhoon* factor, the Court finds that adjudicating the declaratory judgment claim would serve a useful purpose in clarifying the legal relations at issue. Plaintiffs seek forward-looking relief; namely, a judicial determination whether they are obligated to return the 2022 earn-out. Further, Plaintiffs seek specific declaratory relief that may not necessarily be addressed by the Court's adjudication of Defendant's counterclaims. For example, the Court could find that Plaintiffs did not compete, or did

not breach the APA's warranties, as Counterclaim 4 asserts, without need to address the enforceability of Paragraph 3(iii)(E). Thus, this factor weighs in favor of adjudicating the declaratory judgment claim. *See Skratch Labs LLC v. Delivery Native, Inc.*, No. 20-cv-01565-WJM-STV, 2021 WL 1406021, at *4 (D. Colo. Apr. 14, 2021) ("[A]lthough the counterclaim for declaratory judgment shares many features of Plaintiff's claims of trademark infringement, Defendant has identified allegations which enlarge the scope of the dispute beyond what Plaintiff has pled. As such, dismissal is inappropriate at this stage.").

Third, Plaintiffs had no alternative remedy for affirmatively seeking an adjudication of their rights and obligations under Paragraph 3(iii)(E) of the APA that would be more effective than declaratory relief. Thus, this factor weighs in favor of adjudicating the declaratory judgment claim.

On balance, the Court concludes that dismissing Plaintiffs' third declaratory judgment claim at this stage would be premature. *See Reddy v. Essentia Ins. Co.*, No. 21-cv-00433-RMR-MEH, 2021 WL 3742243, at *7 (D. Colo. Aug. 24, 2021); *Skratch Labs*, 2021 WL 1406021, at *4. Plaintiffs, as masters of their own complaint, are entitled to seek the Court's redress concerning their respective rights and obligations and have plausibly pleaded facts establishing the availability of declaratory relief.

For these reasons, the Court **recommends** that Defendant's Motion [#16] be **denied** with respect to Claim 3, insofar as the claim seeks a declaration under Delaware law.

c.      **Failure to State a Claim**

Defendant argues, in the alternative, that the Court should dismiss Plaintiffs' Claim

3 for failure to state a claim. *Def.'s Motion* [#16] at 9-10. Specifically, Defendant argues

that "Plaintiffs plead no facts to support the two-part test applied in Delaware." *Id.* at 9.

Under Delaware law, the "fundamental public policy of contractual enforcement is

not absolute and will kneel to competing public policies of overriding concern." *Unbound*

*Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1032 (Del. Super. Ct. 2021).

"The inclusion of penalties disguised as liquidated damages provisions presents one

such constraint on the freedom of contract." *Id.* "Liquidated damages provisions embody

the parties' best guess of the amount of injury that would be sustained in a contractual

breach and serve to make certain and definite damages which would otherwise be

uncertain and not susceptible of proof." *Id.* (internal quotation marks and citation

omitted). "In contrast, a penalty is a punishment for default, rather than a measure of

compensation for breach, that inserts with blunt instruments a stipulated sum irrespective

of the damage sustained." *Id.* (internal quotation marks, modification, and citation

omitted). "That the line separating good and bad faith recompense is often thin makes

close scrutiny appropriate." *Id.*

To determine whether a provision is a valid liquidated damages clause or an

improper penalty under Delaware law, the Court undertakes a two-prong analysis:

> First, the Court must determine whether damages were certain, *i.e.*,
> capable of accurate calculation, at the time of contracting. If damages were
> calculable with a fair amount of precision, then a clause that concocts an
> aggravated total is a penalty. And second, if damages were uncertain or at
> least could not be forecasted reliably, then the Court must determine
> whether the amount selected is reasonable. At this step, the Court will not
> strike that number merely because the cost has become financially
> inconvenient for [a counterparty] to honor. Instead, to be unreasonable, the

amount at issue must be *unconscionable or not rationally related* to any measure of damages a party might conceivably sustain.

*Id.* at 1032-33 (internal quotation marks and citations omitted).

Here, Plaintiffs allege that Paragraph 3(iii)(E) of the APA provided that "if any Equityholder breaches a Noncompetition Agreement . . . Seller and the Equityholders shall be liable, on a joint and several basis, for the immediate return of the full amount of any Earn-Out Payments which were previously paid to Seller[.]" *Def.'s Ex. C, APA* [#17] at 19 ¶ 3(iii)(E); *Compl.* [#4] ¶ 45. In other words, Plaintiffs allege that they were subject to a provision requiring a stipulated sum in the event of a breach irrespective of the measure of damages associated with the breach. Thus, Plaintiffs have plausibly stated a claim that Paragraph 3(iii)(E) of the APA is an improper penalty under Delaware law.

Therefore, the Court **recommends** that the Motion [#16] be **denied** as to Claim 3 on the alternative ground that Plaintiff fails to state a claim under Delaware law.

### 3.    State Law Claims

The remaining claims subject to Defendant's Motion [#16] (Claims 5-8) relate to Plaintiffs' employment relationship with Defendant. *See Compl.* [#4] at 55-61 (asserting claims for failure to pay wages and wrongful termination under the Colorado Wage Claim Act), 58-61 (asserting a common law claim for retaliatory discharge pursuant to Colorado's public policy), 62-63 (asserting a claim for unequal payment on the basis of sex under the Equal Pay Act). Thus, under Colorado's choice of law rules, Delaware law governs any claim concerning the employment relationship unless Plaintiffs demonstrate that (1) Delaware has no substantial relationship to the parties or the transaction; or (2) Colorado law would apply absent the choice of law provision, application of Delaware law is contrary to a fundamental policy of Colorado, and Colorado has a materially greater

interest than Delaware in the determination of Plaintiffs' claims. *See Cherry Creek Mortg.*, 2021 WL 3710360, at *3.

Here, Plaintiffs make no attempt to make such a showing. Nor do they argue that the choice of law provisions to which they agreed are otherwise unenforceable. Because the parties' agreements mandate application of Delaware law, Plaintiffs' claims asserted under the laws of Colorado are "not applicable to this case." *Id.* at *8 (dismissing statutory claims arising under the laws of a different state); *Lester v. Gene Express, Inc.*, No. 09-cv-02648-REB-KLM, 2010 WL 3941417, at *1 (D. Colo. Sept. 27, 2010) (same); *see also Rowe v. Gene Express, Inc.*, No. 10-CV-01764-REB-MJW, 2010 WL 4684028, at *2 (D. Colo. Nov. 10, 2010) (declining to convert claims under one state's wage act to claims under another state's wage act because "[i]t is Plaintiffs' prerogative to determine which claims to assert in this case").

Because Colorado law does not govern the parties' dispute, the Court **recommends** that Defendant's Motion [#16] be **granted** as to Plaintiffs' Claims 5, 6, 7, and 8, and that such claims be **dismissed with prejudice**. *Cherry Creek Mortg.*, 2021 WL 3710360, at *9.

## B. Plaintiffs' Motion [#48]

Plaintiffs move to dismiss Defendant's Counterclaims 1, 2, 3 and 5 in whole and Counterclaim 4 in part. *Motion* [#48] at 2. In response, Defendant voluntarily dismisses Counterclaim 3 and Counterclaim 5. *Response* [#53] at 2 n.3. Accordingly, the Court will not consider Plaintiffs' arguments concerning those Counterclaims.

### 1.    Counterclaim 1 (Breach of Non-Competes)

In their Motion [#48], Plaintiffs argue that Defendant's first counterclaim is nothing more than "conclusory allegations and bare assertions." *See Am. Answer and Countercls.* [#27-2] at 128-29; *Pls.' Motion* [#48] at 14-15. Plaintiffs fault Defendant for failing to identify "any transactions in which Plaintiffs . . . actually competed with [Defendant]" and "cherry-pick[ing] language from IEM's website." *Pls.' Motion* [#48] at 14-15.

The Court has already determined, *supra* section III(A)(1), that the Non-Competes are governed by Delaware law. *See also Pls.' Ex. A* [#49] at 4 ¶ 5; *Pl.'s Ex. B* [#49] at 10 ¶ 5; *Pl.'s Ex. C* [#49] at 16 ¶ 5. To state a claim for breach of contract under Delaware law, "the plaintiff must plead facts plausibly suggesting (1) the existence of a contract, (2) the breach of an obligation imposed by that contract, and (3) resulting damage." *Elkay Interior Sys. Int'l, Inc. v. Weiss*, No. CV 22-438-RGA-JLH, 2022 WL 17961568, at *2 (D. Del. Dec. 27, 2022).

First, Defendant has plausibly alleged the existence of operative contracts (the Non-Competes). *Pl.'s Ex. A* [#49]; *Pl.'s Ex. B* [#49]; *Pl.'s Ex. C* [#49].

Second, Defendant has plausibly alleged that Plaintiffs breached those contracts by operating a subsidiary of RMSM that competes with Defendant. *Am. Answer and Countercls.* [#27-2] at 124, 129-30 ¶¶ 48-52, 83-85. Namely, IEM, which the McGuires operate, represents itself as a "trusted source for new wholesale electric motors and air compressors [and] a comprehensive array of new and used surplus industrial equipment." *Id.* ¶ 52. IEM represents that its "expertise extends to Electric Motors of various types, Vertical Motors, Air Compressors, Fans, Blowers, Pumps, Reducers, Mixers, and Gearboxes." *Id.* This, Defendant alleges, constitutes direct or indirect engagement in a

business that is "actively engaged in . . . vibration analysis, dynamic balancing, preventive maintenance, predictive maintenance, condition monitoring, electrical testing and diagnostics, air compressor sales and service, electric motor sales and service, [or] laser shaft alignment[.]" *Id.* ¶ 35. Further, Defendant alleges that Scott McGuire "filed documents" on IEM's behalf with the Colorado Secretary of State in March 2023 and February 2025. *Id.* ¶ 49. The Court finds that this allegation is enough at the pleading stage to undermine Plaintiffs' argument that the McGuires were not actively engaged in IEM's business after entering their Non-Competes in 2022. *Id.* ¶ 49. To the extent that Plaintiffs challenge Defendant's failure to identify any transaction in which Plaintiffs, through IEM, competed, the Court finds that Defendant need not prove its case at the pleadings stage. *Sutton*, 173 F.3d at 1236. Plaintiffs' argument is more appropriate for a summary judgment motion.

With respect to damages, Defendant states only that it is entitled to the return of the 2022 earn-out in the amount of $800,000 based on Plaintiffs' breach. *Am. Answer and Countercls.* [#27-2] ¶¶ 88-90. Apart from alleging that Defendant is entitled to "other damages" including "costs, interest, and attorneys' fees as provided by law, contract, or statute," *id.* ¶ 90, Defendant makes no factual assertion that it was injured by Plaintiffs' breach. *See Elkay*, 2022 WL 17961568, at *3 (finding damages sufficiently alleged where plaintiffs asserted that they will suffer irreparable harm, the erosion of goodwill and relationships with customers, and missed business opportunities). However, "[u]nder Delaware law, a party need not plead cognizable damages as an element of a claim for breach of contract because the court can vindicate a breach of contract through an award of nominal damages." *Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, 318

A.3d 450, 471 (Del. Ch. 2024) (internal quotation marks and citation omitted); *see also Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*, 302 A.3d 430, 454 (Del. Ch. 2023) ("A claim for breach of contract can give rise to an equitable remedy even in the absence of quantifiable harm."); *Frank Invs. Ranson, LLC v. Ranson Gateway, LLC*, No. CV 11101-VCN, 2016 WL 769996, at *9 (Del. Ch. Feb. 26, 2016) (noting viability of breach of contract claim, even if it rests on nominal damages).

For these reasons, the Court concludes that Defendant has stated a claim for breach of the Non-Competes. Therefore, the Court **recommends** that Plaintiffs' Motion [#48] be **denied** with respect to Counterclaim 1.

### 2.    Counterclaim 2 (Breach of the Duty of Loyalty)

Defendant alleges that the McGuires, as Defendant's employees, owed Defendant a duty of loyalty that they breached by operating a business that competed with Defendant, misappropriating Defendant's assets, and using those assets to support IEM's competing business. *Am. Answer and Countercls.* [#27-2] ¶¶ 93-95. Plaintiffs move for dismissal for two reasons: (1) Defendant's allegations are bare and conclusory, and (2) the economic loss rule bars the claim.

In briefing this issue, the parties appear to agree that Colorado law governs this common law claim. Accordingly, the Court will assume without deciding that Colorado law applies.[5] *See*, *e.g.*, *First-Citizens Bank & Tr. Co. v. HSBC Holdings PLC*, No. 3:23-cv-

---

[5] The Court would reach a similar conclusion under Delaware law. In Delaware, "[t]he economic loss doctrine prohibits recovery in tort for losses unaccompanied by a bodily harm or a property damage. In other words, the doctrine bars a plaintiff from recovering in tort for losses that are purely economic in nature." *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, No. CIV.A. N10C-07-042MMJ, 2012 WL 1409013, at *3 (Del. Super. Ct. Apr. 4, 2012) (internal quotation marks and citations omitted). Delaware courts apply the "gist of the action" test to determine whether "the 'nature of the duty' upon which the breach of contract claim rests is the same as that which forms the basis of the tort claims." *Wiggins v. Physiologic Assessment Servs., LLC*, 141 A.3d 1058,

02483-LB, 2024 WL 3364016, at *14 (N.D. Cal. July 9, 2024) (assuming California law applies to a breach of duty of loyalty claim where briefing was "slight on the choice-of law issue"); *Garza v. The Pep Boys - Manny, Moe & Jack of Delaware, Inc.*, No. 10-cv-00365-REB-KLM, 2011 WL 486197, at *2 (D. Colo. Feb. 7, 2011) (assuming Texas law applied to the issue of designation of nonparties at fault, where parties agreed that it did).

"The economic loss rule is a judge-made doctrine that holds that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Levin v. Five Corners Strategies, LLC*, 541 F. Supp. 3d 1262, 1269 (D. Colo. 2021) (internal quotation marks and citation omitted). "Colorado courts derived the rule from policy considerations, namely: the need to distinguish between tort law and contract law and to enforce contracting parties' expressed expectations." *Id.* "If the source of the duty is a contract, any tort claims premised on that contractual duty are invalid." *Id.* "In order to be considered independent of contract, a duty of care must satisfy two conditions: '[f]irst, the duty must arise from a source other than the relevant contract'; and '[s]econd, the duty must not be a duty also imposed by the contract.'" *Pernick v. Computershare Tr. Co., Inc.*, 136 F. Supp. 3d 1247, 1270 (D. Colo. 2015) (quoting *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009)); *see also Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000) (clarifying that any confusion

---

1061 (Del. Super. Ct. 2016) (internal quotation marks and citation omitted). "[A] claim will be viewed as one in tort if the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract." *Id.* at 1062 (internal quotation marks and citation omitted). Absent any allegation that Defendant was injured in a manner that is not purely economic, or that the nature of the duty at issue is broader than any duty imposed by contract, the Court would necessarily conclude that the economic loss rule bars Defendant's claim under Delaware law.

between actions sounding in contract and actions sounding in tort can be avoided by "maintaining the focus on the source of the duty alleged to have been violated").

The Court finds that Defendant has plausibly alleged a breach of the duty of loyalty, to the extent that it is based on Plaintiffs' alleged violation of their Non-Competes. However, the Court finds that Defendant has not asserted any facts supporting its bald assertions that Plaintiffs "misappropriated ISS assets, including ISS employees' labor," "used those assets to support IEM's competing business," and "negligently managed [Defendant's] assets." *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."). Thus, Defendant plausibly alleges only that Plaintiffs breached the duty of loyalty *by nature of their acts of competition against Defendant*.

In *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 492 (Colo. 1989), the Colorado Supreme Court recognized a duty of loyalty inherent in the employer-employee relationship independent of contract. "Underlying the duty of loyalty arising out of the employment relationship," the court reasoned, "is the policy consideration that commercial competition must be conducted through honesty and fair dealing." *Id.*  "[O]ne facet of the duty of loyalty is an agent's 'duty not to compete with the principal concerning the subject matter of his agency.'" *Id.* at 492-93 (quoting RESTATEMENT (SECOND) OF AGENCY § 393 (A.L.I. 1957)). Thus, Defendant has, at a minimum, alleged the existence of a duty by nature of an employment relationship, independent of contract principles. Here, however, the parties opted to memorialize that duty by contract: namely, the Non-Competes that Plaintiffs signed. *Pl.'s Ex. A* [#49] at 3 ¶ 1; *Pl.'s Ex. B* [#49] at 9 ¶ 1; *Pl.'s Ex. C* [#49] at 15 ¶ 1. Thus, because in this case, "the source of the duty is a contract,

any tort claims premised on that contractual duty are invalid." *Levin*, 541 F. Supp. 3d at 1269; *see also Owens v. Nationstar Mortg. LLC*, No. 14-cv-01434-PAB-KLM, 2015 WL 1345536, at *2 (D. Colo. Mar. 23, 2015) ("[E]ven if the duty would be imposed in the absence of a contract, it is not independent of a contract that memorializes it.").

Accordingly, the Court **recommends** that the Motion [#48] be **granted** as to Defendant's Counterclaim 2 and that such counterclaim be **dismissed with prejudice**. *See SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1297 (D. Colo. 2017) (dismissing with prejudice claims barred by economic loss rule).

### 3.    Counterclaim 4 (Breach of the APA)

Defendant alleges that Plaintiffs violated warranties that they made in the APA—including that RMSM had no subsidiaries or affiliates and that the documents concerning RMSM's finances provided as part of the acquisition were "complete and accurate." *Am. Answer and Countercls.* [#27-2] at 135-36 ¶¶ 130, 132. Defendant alleges that "at the time of entering into the APA and upon information and belief, Plaintiffs knew that the financial documents did not accurately reflect RMSM's revenue or future potential profitability." *Id.* ¶ 133.

In their Motion [#48], Plaintiffs argue that Defendant's Counterclaim 4 should be dismissed to the extent that it relates to Plaintiffs' financial documents because Defendant "cannot identify a single inaccuracy in the documents." *Motion* [#48] at 16. Defendant argues that it has plausibly pleaded a breach because, if RMSM was IEM's parent company, and Plaintiffs did not disclose their involvement with IEM during the acquisition negotiations, then RMSM's financial documents "did not accurately reflect RMSM's revenue." *Id.*

The Court finds that Defendant has pleaded just enough to state a claim for violation of the APA. As previously discussed, Defendant need not prove its case at this stage in the litigation. *Sutton*, 173 F.3d at 1236. Defendant alleges that Plaintiffs knew that the financial documents were incomplete, and Defendant propounded a theory by which that allegation is, at least, plausible. Namely, the financial documents were incomplete because they omitted reference to the revenues generated by IEM. Accordingly, the claim survives Plaintiffs' motion to dismiss.

The Court **recommends** that Plaintiffs' Motion [#48] be **denied** with respect to Counterclaim 4.

### IV.    Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#16] be **GRANTED in part and DENIED in part**.

IT IS FURTHER **RECOMMENDED** that the Motion [#16] be **GRANTED in part** as to Plaintiffs' Claims 1, 2, 5, 6, 7, and 8, that Plaintiffs' Claim 1 be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiffs' Claims 2, 5, 6, 7, and 8 be **DISMISSED WITH PREJUDICE**.

IT IS FURTHER **RECOMMENDED** that the Motion [#16] be **DENIED in part** as to Plaintiffs' Claim 3, to the extent that claim seeks declaratory relief under Delaware law.

IT IS FURTHER **RECOMMENDED** that the Motion [#16] be **DENIED as moot** as to Plaintiffs' Claim 4 in light of Plaintiffs' voluntary dismissal of the claim.

IT IS FURTHER **RECOMMENDED** that the Motion [#48] be **GRANTED in part and DENIED in part**.

IT IS FURTHER **RECOMMENDED** that the Motion [#48] be **GRANTED in part** as to Defendant's Counterclaim 2 and that such counterclaim be **DISMISSED WITH PREJUDICE**.

IT IS FURTHER **RECOMMENDED** that the Motion [#48] be **DENIED in part** as to Defendant's Counterclaims 1 and 4.

IT IS FURTHER **RECOMMENDED** that the Motion [#48] be **DENIED as moot** as to Counterclaims 3 and 5 in light of Defendant's voluntary dismissal of those counterclaims.[6]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and

---

[6] If this Recommendation is adopted, the following claims will remain: (1) Claim 3: Declaratory Judgment (enforceability of APA Paragraph 3(iii)(E) under Delaware law); (3) Claim 9: Breach of contract and breach of the covenant of good faith and fair dealing (Employment Agreements); and (4) Claim 10: Breach of contract and breach of the covenant of good faith and fair dealing (APA). If this Recommendation is adopted, the following counterclaims will remain: (1) Counterclaim 1: Breach of contract (Non-Competes); and (2) Counterclaim 4: Breach of contract (APA).

recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: February 24, 2026                BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge