IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:25-cv-01037-RMR-KAS

RMSM LTD., f/k/a ROTATING MECHANICAL SOLUTIONS CORP.,
RYAN MCGUIRE,
SCOTT MCGUIRE,

      Plaintiffs and Counterclaim Defendants,

v.

INDUSTRIAL SERVICE SOLUTIONS, LLC,

      Defendant and Counterclaim Plaintiff.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Kathryn A. Starnella entered on February 24, 2026, ECF No. 72, addressing Defendant's Partial Rule 12(b)(6) Motion to Dismiss ("Defendant's Motion"), ECF No. 16, and Plaintiffs' Partial Rule 12(b)(6) Motion to Dismiss ("Plaintiffs' Motion"), ECF No. 48. Magistrate Judge Starnella recommends that both Motions be granted in part and denied in part. Plaintiffs filed their Objection, ECF No. 75, and Defendant filed its Response, ECF No. 78. The Court has reviewed the Recommendation, the Objection, the Response, and the record. For the reasons stated below, the Recommendation is accepted in part and rejected in part.

## I.    BACKGROUND[1]

This case involves employee and former employer disputes over wages and wrongful termination. Plaintiffs Ryan McGuire and Scott McGuire started a company called Rotating Mechanical Solutions Corporation in 2010, or RMSM Ltd. ("RMSM"). RMSM is a Colorado corporation with its principal place of business in Littleton, Colorado. In 2022, the McGuires sold RMSM's assets to Defendant Industrial Service Solutions, LLC ("ISS"). The McGuires agreed to become Defendant's employees and operate RMSM's assets. Defendant is a Delaware limited liability company with its principal place of business in Texas and owns and operates a business in Brighton, Colorado.

The terms of the 2022 sale were memorialized in six documents: (1) Employment Agreement between Ryan McGuire and Defendant (the "Ryan Emp. Agreement"); (2) Employment Agreement between Scott McGuire and Defendant (the "Scott Emp. Agreement"); (3) Asset Purchase Agreement between Defendant and RMSM (the "APA"); (4) Noncompetition Agreement between Defendant and RMSM (the "RMSM Non-compete"); (5) Noncompetition Agreement between Defendant and Ryan McGuire (the "Ryan Non-compete"); and (6) Noncompetition Agreement between Defendant and Scott McGuire (the "Scott Non-compete"). According to Plaintiffs, they were entitled to payments and bonuses under the Employment Agreements and APA.

The APA outlines "earn-out payments" the McGuires were entitled to if their Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA") exceeded certain thresholds. It also provides that Defendant is not required to pay any earn-out

---

[1] The following facts are from the "Background" section of the Recommendation. ECF No. 72 at 1-8.

payments if Plaintiffs violate their respective Non-compete agreements. Under the APA, if any such violation occurred, Plaintiffs are jointly and severally liable for the "immediate return of the full amount of any Earn-Out Payments which were previously paid to seller."

The Employment Agreements describe the conditions for the McGuires' annual bonuses, including "the achievement of management incentive targets and at the discretion of the Management Committee." These "management incentive targets" correspond with the APA's EBITDA thresholds. The Employment Agreements also provide that the McGuires would receive 160 hours of paid vacation time, which would become "earned, vested, and determinable" on the first day of each year.

Plaintiffs assert they earned the full $800,000 earn-out in 2022. Defendant also paid annual bonuses in the amount of $23,333.33 to each of the McGuires. However, Plaintiffs allege Defendant made drastic changes to undermine Plaintiffs' business in 2023. Plaintiffs did not receive an earn-out in 2023, and they demanded Defendants re-evaluate the EBITDA figure. Even after the re-calculation, the 2023 EBITDA did not exceed the threshold to trigger an earn-out. Plaintiffs initiated arbitration concerning the earn-out, as required by the APA's arbitration clause. Plaintiffs allege that after they initiated arbitration, Defendant terminated their employment and failed to pay out the McGuires' accrued vacation time.

During the initial arbitration proceedings, Defendant allegedly accused Plaintiffs of violating their respective Non-competes and requested return of the $800,000 earn-out from 2022. Plaintiffs now assert ten causes of action:

3

- Claim 1: Declaratory Judgment – Non-competes in the August 15, 2022 Noncompetition Agreements Supersede the Non-competes in the Employment Agreements Signed on or Around August 5, 2022;

- Claim 2: Declaratory Judgment – Non-competes are Unenforceable Under Colorado Law;

- Claim 3: Declaratory Judgment – Paragraph 3(iii)(E) of the APA is Invalid Under Either Colo. Rev. Stat. § 8-4-121 or Delaware Law as an Improper Penalty;

- Claim 4: Declaratory Judgment – Paragraph 2(B) in the Employment Agreements is Invalid Under Colo. Rev. Stat. § 8-4-121;

- Claim 5: Violation of the Colorado Wage Claim Act for Failure to Pay Wages, Colo. Rev. Stat. § 8-4-101 *et seq.*;

- Claim 6: Violation of the Colorado Wage Claim Act for Wrongful Termination, Colo. Rev. Stat. § 8-4-120;

- Claim 7: Retaliatory Discharge in Violation of Colorado's Public Policy and the Common Law;

- Claim 8: Violation of Colorado's Equal Pay for Equal Work Act, Colo. Rev. Stat. § 8-5-102(2)(d);

- Claim 9: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Regarding the Employment Agreements;

- Claim 10: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Regarding the APA.

4

Defendant asserts counterclaims, alleging that Plaintiffs violated their respective Non-competes when they ran a separate business, Industrial Electric and Machine Corp. ("IEM"). Defendant contends the McGuires have been on IEM's board of directors since 2017 and that IEM engages in business that competes with Defendant. Accordingly, Defendant brings the following counterclaims:

- Counterclaim 1: Breach of Contract (Non-competes);

- Counterclaim 2: Breach of the Duty of Loyalty;

- Counterclaim 3: Fraudulent Inducement;

- Counterclaim 4: Breach of Contract (APA); and

- Counterclaim 5: Negligent Misrepresentation.

At this stage, Defendant moves to dismiss Plaintiffs' claims 1-4 and 6-8 in whole and claim 5 in part under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF No. 16. Plaintiffs voluntarily dismissed claim 4. Plaintiffs also move to dismiss counterclaims 1, 2, 3, and 5 in whole and counterclaim 4 in part. ECF No. 48.

## II.    LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district

5

judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). When no proper objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."[2] Fed. R. Civ. P. 72(b) advisory committee's note to 1993 amendment.

### III.   ANALYSIS

Plaintiffs object to Magistrate Judge Starnella's recommended dismissal of the Plaintiffs' claims 1-3 and 5-8. ECF No. 75 at 2. The Court addresses each below.

---

[2] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review, Fed. R. Civ. P. 72(b). *See, e.g., Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 249 n.1 (D. Colo. 2014) (Daniel, J.).

6

### A. Plaintiffs' Claims 1 and 2

Plaintiffs' first two claims relate to the Non-compete Agreements: (1) whether the non-competition provisions in the Non-competes supersede the non-competition provisions in the Employment Agreements; and (2) whether the Non-competes are enforceable. Magistrate Judge Starnella explains that Plaintiffs' claim 2 should be dismissed because Delaware law governs the Agreements. ECF No. 72 at 13. She also recommends dismissing Plaintiffs' claim 1 for failing to allege an actual controversy. *Id.* at 17. Plaintiffs argue that "Magistrate Judge Starnella sua sponte analyzed choice-of-law clauses" and incorrectly concluded that Delaware law applies. ECF No. 75 at 2-3. Plaintiffs argue the contracts should be interpreted under Colorado law, specifically Colo. Rev. Stat. § 8-2-113(7).

First, Plaintiffs seem to suggest that Magistrate Judge Starnella overstepped her authority by sua sponte analyzing choice of law. However, disputes over choice of law are common in contract cases. *See e.g., Zynex Med., Inc. v. Frabotta*, No. 21-CV-1076-RMR-KLM, 2022 WL 1211876 (D. Colo. Mar. 4, 2022); *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306 (10th Cir. 2014); *Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783 (10th Cir. 1984). Therefore, it is critical and appropriate for courts to address choice of law in such cases.

Second, the Recommendation comes to the correct conclusion that Delaware law governs the Agreements at issue in this case. "In a diversity action we apply the conflict-of-laws rules of the forum state." *Kipling*, 774 F.3d at 1310. In this case, Colorado is the forum state, and the Court applies the conflict-of-laws rules of Colorado. Colorado follows

the Restatement (Second) of Conflict of Laws (1971) for contract actions. *Zynex Med,
2022 WL 1211876, at *2*. The Restatement (Second) § 187 provides that the law of the
state chosen by the parties to govern their contractual rights will be applied unless: (1)
the chosen state has no substantial relationship to the parties to the transaction and there
is no other reasonable basis for the parties' choice; or (2) application of the law of the
chosen state would be contrary to a fundamental policy of the state which has a materially
greater interest than the chosen state in the determination of the particular issue. . . ." *Id.*
Here, each Agreement's choice of law clause selects Delaware law to govern the
Agreement. ECF No. 72 at 10-11. For example, the APA contains a "Governing Law;
Litigation" provision that states:

> This Agreement and the agreements executed in connection herewith shall
> be governed by the laws of the State of Delaware (regardless of the laws
> that might otherwise govern under applicable principles of conflicts of law of
> the State of Delaware) as to all matters including, but not limited to, matters
> of validity, construction, effect, performance and remedies.

ECF No. 17 at 28. The Employment Agreements and Non-competes each contain a
similar governing law provision that selects Delaware law.[3] *See id.* at 8, 14, 40, 52.
Defendant is a Delaware corporation and Plaintiffs were employed by Defendant, making
Delaware a state of substantial relationship to the parties.

---

[3] The Non-competes also contain a "Specific Performance" provision, stating "[t]he parties . . . each
grants the other the right to specifically enforce (including injunctive relief where appropriate) the terms of
this Agreement in the state courts, or in the United States District Courts in Chicago, Illinois. The parties
consent to such jurisdiction, agree that venue will be proper in such courts and waive any objections
based upon <u>forum non conveniens</u>. The choice of forum set forth in this <u>Section 4</u> shall not be deemed to
preclude the enforcement of any action under this Agreement in any other jurisdiction." ECF No. 17 at 40,
52 (emphasis in the original).

Further, the choice of law provision in each of the Agreements contains broadening language that confirms Delaware law should govern. The APA's choice of law provision states: "This Agreement and the agreements executed in connection herewith shall be governed by the laws of the State of Delaware (regardless of the laws that might otherwise govern under applicable principles of conflicts of law of the State of Delaware) as to all matters including, but not limited to, matters of validity, construction, effect, performance and remedies." ECF No. 17 at 18. The provision broadly applies to "all matters" and suggests Delaware law should apply to all matters related to the contract. *See Cherry Creek Mortg., LLC v. Jarboe*, No. 18-CV-00462-KLM, 2021 WL 3710360, at *4 (D. Colo. Aug. 20, 2021) (finding claims "must be adjudicated under Colorado law" because the choice of law provision included broadening language when selecting Colorado). The Employment Agreements and Non-compete Agreements contain similar choice of law provisions clearly identifying Delaware law as governing the agreement. ECF No. 17 at 8 (Employment Agreement choice of law provision stating the "agreement shall be governed and construed in accordance with the laws of the State of Delaware, without regard to conflicts of laws principles); *id.* at 40 (Non-compete Agreement choice of law provision stating the "agreement shall be governed by, construed, applied and enforced in accordance with the internal laws of the state of Delaware, and no doctrine of choice of law shall be used to apply any other law other than that of Delaware"). Therefore, the Court agrees with the Recommendation that Delaware law governs the Agreements.

9

However, the Court agrees with Plaintiffs that the Colorado Wage Claims Act ("CWCA") supersedes the choice of law provision in the Agreements. ECF No. 75 at 5. While Delaware law applies to Plaintiffs' contract claims, the choice of law provision does not apply to Plaintiffs' claims under the CWCA. *Brownlee v. Lithia Motors, Inc.*, 49 F. Supp. 3d 875, 882 (D. Colo. 2014) ("[W]hile Oregon law applies to Plaintiff's breach of contract claim, the provision does not apply to his claim for unpaid wages under the Wage Act which, in turn, is a Colorado statute and would necessitate the application of Colorado law."). Employees physically located in Colorado are covered by CWCA. *See Hodgden v. Mountain W. Ins. & Fin. Servs. LLC*, No. 25-CV-00477-REB-TPO, 2025 WL 2029921, at *2 (D. Colo. July 21, 2025) ("Courts in this district consistently have interpreted this provision, as well as its predecessor, as meaning that only employees physically located in Colorado are covered."). "Employers" under the CWCA include all employers under the Fair Labor Standards Act. Colo. Rev. Stat. § 8-4-101(6). Therefore, the Court deduces that employers outside of Colorado are also bound by the CWCA if they employ Colorado residents.

The CWCA includes provisions related to non-competition covenants. Under the CWCA, "[n]otwithstanding any contractual provision to the contrary, Colorado law governs the enforceability of a covenant not to compete for a worker who, at the time of termination of employment, primarily resided and worked in Colorado." Colo. Rev. Stat. § 8-2-113(6). Additionally, "[a] worker who is a party to a covenant not to compete . . . may seek a declaratory judgment from a court of competent jurisdiction or an arbitrator that the covenant not to compete is unenforceable." *Id.* § 8-2-113(7). Here, Plaintiffs are residents

of Colorado and beneficiaries of CWCA protections. Therefore, the Court agrees with Plaintiffs' that they appropriately "invoked Colorado law to bring their first and second claims," which seek declaratory judgment with respect to the Non-competes. Accordingly, the Court sustains Plaintiffs' objection and overrules the Recommendation with respect to Plaintiffs' claims 1 and 2.

### B. Plaintiffs' Claim 3

The Recommendation analyzes Plaintiffs' claim 3 in two ways. First, Magistrate Judge Starnella applies the *Mhoon* factors and determines Plaintiffs have plausibly pleaded facts establishing the availability of declaratory relief. ECF No. 72 at 18-21. She also finds that Plaintiffs have plausibly stated a claim under Delaware law. *Id.* at 21-23. Therefore, Magistrate Judge Starnella recommends denying Defendant's Motion to Dismiss as to Plaintiffs' claim 3. However, she limits the denial to the extent that claim seeks declaratory relief under Delaware law. *Id.* at 31. Plaintiffs object to the Recommendation regarding claim 3 but also "do not object to the portion of Magistrate Judge Starnella's Recommendation in which she advised that part of this claim should survive." ECF No. 75 at 2 n.3.

Plaintiffs' claim 3 requests declaratory relief based on the alleged invalidity of Paragraph 3(iii)(E) of the APA under Colorado or Delaware Law. Magistrate Judge Starnella rejects the portion of claim 3 seeking relief under Colorado law, given her assessment that Colorado law does not apply. However, as described above, the CWCA governs covers Colorado citizens and contains provisions related to wages and compensation. Claim 3 challenges the enforceability of APA Paragraph 3(iii)(B), which

defines Plaintiffs' earn-out payments. Therefore, Plaintiffs may appropriately seek relief under Colorado law. Accordingly, the Court accepts in part and denies in part the Recommendation and denies Defendants' Motion with respect to claim 3, in its entirety.

### C. Plaintiffs' Claims 5, 6, and 8

Plaintiffs' claims 5 and 6 seek relief under the CWCA, Colo. Rev. Stat. § 8-4-101, *et seq.*, and Plaintiffs' claim 8 seeks relief under the Colorado Equal Pay for Equal Work Act ("EPEWA"), Colo. Rev. Stat. § 8-5-101, *et seq.* ECF No. 85 at 3-4. Plaintiffs object to the Recommendation regarding these claims for two reasons: (1) the Recommendation "was wrong that choice-of-law clauses in the Relevant Contracts can override Colorado's wage statutes"; and (2) the Recommendation "misinterpreted the choice-of-law clause in the employment agreements and misapplied Colorado's conflicts-of-law principles." *Id.* at 4. The Court addresses each claim below.

To bring a wage claim (claim 5) under CWCA, Plaintiffs "must allege that their wages or compensation were 'earned, vested, and determinable' under the terms of his or her employment agreement." *Goodwin v. Johnson Controls, Inc.*, No. 24-CV-00989-RMR-TPO, 2025 WL 925848, at *2 (D. Colo. Mar. 27, 2025) (citing § 8-4-109(3)(b)). Here, Plaintiffs are Colorado citizens and have alleged their wages were earned, vested, and determinable in Colorado. ECF No. 4 ¶¶ 18-21, 36-37. Defendant contends "Earn-Out payments are not wages under the CWCA." ECF No. 78 at 10. However, the Colorado Wage Act includes bonuses or commissions earned under an employer-employee agreement as wages or compensation. *Goodwin*, 2025 WL 925848, *2 (citing § 8-4-101(14)(a)(II)). Additionally, the central dispute in this case surrounds the compensation

allegedly owed to Plaintiffs. Therefore, the Court finds Plaintiffs have sufficiently pled facts at this stage to state claim 5.

To bring a wrongful termination claim (claim 6) under CWCA, Plaintiffs must demonstrate Defendant acted in a way to "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate" against them for filing any complaint or proceeding related to wages, hours, or employment of minors. Colo. Rev. Stat. § 8-4-120(1)(a). Here, the parties attempted to resolve the payment dispute prior to initiating arbitration proceedings. ECF No. 4 ¶¶ 234-40. Ultimately, Plaintiffs filed an arbitration against Defendant on December 27, 2024, and were terminated on January 7, 2025. *Id.* ¶¶ 241, 244. Plaintiffs allege they were terminated in retaliation for filing the arbitration. *Id.* ¶¶ 243-45. Defendant argues claim 6 should be dismissed, because "Earn-Out Payments are not wages" and "Plaintiffs' arbitration demand does not mention the CWCA or the McGuires' employment with ISS." ECF No. 78 at 11. The Court has determined that Earn-Out payments likely qualify as wages or compensation under the Colorado Wage Act. Additionally, the Colorado statute does not require the arbitration proceeding to be under the Colorado Wage Act. Colo. Rev. Stat. § 8-4-120(1)(a) ("Filed a complaint or instituted or caused to be instituted a proceeding under this article 4 or *any other law or rule related to wages*, hours, or employment of minors") (emphasis added). Thus, the Court finds Plaintiffs have alleged sufficient facts related to claim 6 to survive Fed. R. Civ. P. 12(b)(6).

Finally, Plaintiffs' claim 8 alleges violation of Colo. Rev. Stat. § 8-5-102(2)(d), which provides "[a]n employer shall not [d]ischarge, discipline, discriminate against,

coerce, intimidate, threaten, or interfere with an employee or other person because the employee or person inquired about, disclosed, compared, or otherwise discussed the employee's wage rate." The statutory language of § 8-5-102(2)(d) is nearly identical to that of § 8-4-120(1)(a). Indeed, Plaintiffs' claims for relief under claims 6 and 8 are also similar. Plaintiffs seek the following relief under claim 6: (1) all backpay owed by ISS to Plaintiffs; (2) front pay; (3) the payment of all wages unlawfully withheld; (4) interest on those unpaid wages at a rate of twelve percent per annum from the date the wages were first due; (5) the payment of a penalty of fifty dollars per day for each employee whose rights under this section were violated and for each day that the violation occurred or continued; (6) liquidated damages in an amount equal to two times the amount of the unpaid wages; and (7) reasonable attorney fees and costs to be incurred in this lawsuit, in an amount to be determined at trial. ECF No. 4 ¶ 341. Under claim 8, Plaintiffs seek damages determined at trial and relief available under Colo. Rev. Stat. § 8-5-104(2), which includes "[l]egal and equitable relief, which may include employment, reinstatement, promotion, pay increase, payment of lost wage rates, and liquidated damages"; and "[t]he employee's reasonable costs, including attorney fees." *Id.* ¶ 355. Plaintiffs' claim 6 is broad enough to cover Plaintiffs' claim 8, and both claims are based on the same alleged events. Because Plaintiffs already have a statutory remedy for wrongful termination, they cannot bring another nearly identical claim. *See Hart v. Digitalzone Inc.*, No. 23-CV-00531-GPG-SBP, 2025 WL 1927622, at *17 (D. Colo. May 30, 2025) ("Because he has a statutory remedy for this conduct, he cannot also bring a WDPP claim."). Therefore, the Court dismisses Plaintiffs' claim 8.

Accordingly, the Court sustains Plaintiffs' Objections with respect to claims 5 and 6. For different reasons, the Court agrees with the Recommendation that Plaintiffs' claim 8 should be dismissed.

### D.  Plaintiffs' Seventh Claim

Plaintiffs' claim 7 alleges wrongful termination under Colorado common law. The Recommendation suggests dismissing the claim because Delaware law governs the Agreements. ECF No. 72 at 24. Plaintiffs respond that Colorado law should apply. ECF No. 75 at 12-13. Defendant argues that Delaware law applies and, even if it does not, the claim should be dismissed because the Colorado Wage Act provides its own remedies. ECF No. 78 at 12-13. As explained above, Delaware law applies broadly to "all matters" related to the Agreements. Thus, the Court agrees with the Recommendation and Defendant.

Even if Plaintiffs' claim was appropriately brought under Colorado common law, it would not survive. Wrongful discharge under Colorado common law "evolved as an exception to the at-will employment doctrine and is designed to provide a remedy for unlawful adverse employment actions where no cause of action for breach of contract would lie." *Lester v. Shadow Mountain Mgmt. Corp.*, No. 1:23-CV-02594-SKC-TPO, 2025 WL 1744856, at *4 (D. Colo. June 24, 2025) (citing *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003)). Colorado courts "have specifically disallowed its application where a statute provides a wrongful discharge remedy." *Id.* (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107, n.5 (Colo. 1992)). Here, Plaintiffs seek relief for wrongful discharge under the CWCA. Thus, Plaintiffs' claim 7 must be dismissed.

### E. Plaintiffs' Partial Motion to Dismiss

Neither party has objected to the Recommendation with respect to Plaintiffs' Partial Motion to Dismiss. The Court has reviewed the Recommendation and finds no clear error. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."). Therefore, the Court accepts and adopts the Recommendation with respect to Plaintiffs' Motion.

### IV.    CONCLUSION

For the reasons set forth above, the Court **ORDERS**:

1. Plaintiff's Objection to the Recommendation, ECF No. 75, is **SUSTAINED IN PART** and **OVERRULED IN PART**;

2. The Recommendation, ECF No. 72, is **ADOPTED IN PART** and **REJECTED IN PART**;

3. Defendant's Partial Motion to Dismiss, ECF No. 16, is:

   a. **GRANTED IN PART** with respect to Plaintiffs' claims 7 and 8;

      i.  Plaintiffs' claims 7 and 8 are **dismissed with prejudice**;

   b. **DENIED IN PART** with respect to Plaintiffs' claims 1-3, 5, and 6;

   c. **DENIED AS MOOT** with respect to Plaintiffs' claim 4 in light of Plaintiffs' voluntary dismissal of claim 4;

4. Plaintiffs' Partial Motion to Dismiss, ECF No. 48, is:

   a. **GRANTED IN PART** with respect to Defendants' counterclaim 2;

      i.  Defendants' counterclaim 2 is **dismissed with prejudice**;

16

b.  **DENIED IN PART** with respect to Defendants' counterclaims 1 and 4;

and

c.  **DENIED AS MOOT** with respect to Defendants' counterclaims 3 and 5

in light of Defendant's voluntary dismissal of counterclaims 3 and 5.

DATED:  March 31, 2026

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge

17