**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Regina M. Rodriguez**

Civil Action No. 1:25-cv-01037-RMR-KAS

RMSM LTD., f/k/a ROTATING MECHANICAL SOLUTIONS CORP.,
RYAN MCGUIRE,
SCOTT MCGUIRE,

Plaintiffs and Counterclaim Defendants,

v.

INDUSTRIAL SERVICE SOLUTIONS, LLC,

Defendant and Counterclaim Plaintiff.

---

**ORDER**

---

This matter is before the Court on Plaintiffs' Objection to the Order of United States Magistrate Judge. ECF No. 90. Defendant filed a response to the Objection. ECF No. 95. The Court has reviewed the briefing and record. For the reasons stated below, Plaintiffs' Objection is OVERRULED.

## I. BACKGROUND

On July 23, 2026, Magistrate Judge Starnella held a discovery hearing discussing the parties' joint discovery dispute statement. ECF No. 87. At the hearing, Magistrate Judge Starnella denied Plaintiffs' oral motion to compel supplemental productions related to Plaintiffs' Requests for Production 24 and 25. *Id.* at 2. Plaintiffs' Request for Production No. 24 states:

> Prior to the APA, ISS recognized that "[n]ew motor sales are a significant portion of the [Plaintiffs'] business owing to long-term relationships with

> reputable Original Equipment Manufacturers." See ISS_003754. In fact, ISS estimated that motor sales and service accounted for 35% of Plaintiffs' business. *See id.* ISS also acknowledged that Plaintiffs acquired many of the motors that they later sold and serviced from WEG Electric Corp ("WEG"). *See id.* ISS further knew that Plaintiffs had a distribution agreement with WEG, and that it was important for Plaintiffs' agreement with WEG to continue after the Transaction. See id. Indeed, through that distribution agreement, Plaintiffs received special discount pricing from WEG. *See* Compl. at ¶ 132. WEG told Plaintiffs and ISS that, after the Transaction, the special discount pricing was only for motors sold by Plaintiffs at the Englewood Facility. *Id.* at ¶ 133-34. After the Transaction, however, Steven Elliot from ISS contacted WEG and tried to negotiate the special pricing for every ISS facility. *Id.* at ¶ 135. Within a week of Mr. Elliot breaching the agreement that Plaintiffs and ISS had reached with WEG, WEG removed Plaintiffs' special status and refused to give them the special pricing that it had previously given them. *Id.* at ¶ 136. Thus, Plaintiffs could no longer purchase motors from WEG at the discount pricing, which ate into Plaintiffs' margins when they sold motors after the Transaction and lowered the Adjusted EBITDA that Plaintiffs could generate. *Id.* at ¶ 137. In addition, Plaintiffs often performed field service work on the motors that they acquired from WEG and then sold, so the reduction in sales also reduced the amount of Adjusted EBITDA that Plaintiffs would have earned through field service work. ISS eventually recognized its mistake, which is why, in December of 2024, it acknowledged that Plaintiffs deserved credit for WEG motors sales that they would have completed were it not for ISS's improper actions. See ISS_000116 (ISS admitting that it initially miscalculated Adjusted EBITDA and estimating that Plaintiffs' WEG sales were "reduced" by $110,008 in 2023).
>
> Produce all Documents and Communications related to WEG. This request includes but is not limited to, ISS's internal communications regarding WEG, ISS's communications with Plaintiffs regarding WEG, and ISS's communications with WEG.

ECF No. 90-1 at 91-92. At the discovery dispute hearing, Plaintiffs informed Magistrate Judge Starnella that they decided to narrow the request to just "[d]ocuments related to the allegation that Stephen Elliott from ISS contacted WEG and tried to negotiate this special pricing, and that WEG responded by knocking Plaintiffs' distributorship down so they didn't have the pricing anymore." ECF No.

99 (Hearing Tr.) at 87:15-88:15. In the end, Magistrate Judge Starnella ordered that no supplemental production was required. ECF No. 87 at 2.

Plaintiffs' Request for Production No. 25 states:

> ISS has alleged that the Adjusted EBITDA Plaintiffs generated in 2023 was approximately $35,000. *See* ISS_000042. To arrive at this amount, the data in ISS_000042 reflect costs totaling approximately $1.789 million and depreciation of approximately $35,000, deducted from revenue of about $1.825 million. These costs include approximately $361,000 of Direct Labor and about $479,000 of Salaries, for total salary/labor cost of at least $840,000. But information as to who received the $840,000 of payments has not been provided. Please produce detailed payroll data and/or other documents that show who was paid that money, how much they were paid, and when they were paid. Along with this information, please provide information as to how to reconcile the provided information with the accounting entries in ISS_000042.

ECF No. 90 at 4-5. Magistrate Judge Starnella denied Plaintiffs' oral motion to compel supplemental production with respect to Request for Production No. 25 but permitted Plaintiffs to revise the request. ECF No. 87 at 2.

## II. LEGAL STANDARD

Magistrate judges "may hear and determine any pretrial matters pending before the court, save for eight excepted motions." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461 (10th Cir. 1988) (citing 28 U.S.C. § 636(b)). "These eight motions are generally referred to as 'dispositive' motions." *Id.* Magistrate judges "may issue orders as to non-dispositive pretrial matters, and district courts review such orders under a 'clearly erroneous or contrary to law' standard of review." *Id.* at 1461-62.

"Discovery is clearly a pretrial matter." *Id.* at 1462. Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

## III. ANALYSIS

### A. Plaintiffs' Request for Production No. 25

Plaintiffs' Request for Production No. 25 is based on Plaintiffs' attempt to figure out why labor costs exploded and caused the payouts Plaintiffs would have received to take a hit. ECF No. 99 (Hearing Tr.) at 39:18-22. Plaintiffs believe that Defendant assigned labor costs from other facilities to their jobs and, thus, inflated labor costs. *Id.* at 42:10-18. Magistrate Judge Starnella denied Plaintiffs' Request for Production No. 25, and Plaintiffs assert she erred by engaging in a preemptive merits analysis. ECF No. 90 at 6. Plaintiffs state that "ISS produced a financial document in support of its position that Plaintiffs did not generate enough EBITDA to earn the Bonus" and that, "[w]hen Plaintiffs asked for additional information so that they may interpret the document and check ISS' math, ISS refused because it said Plaintiffs lack evidence that it miscalculated EBITDA." *Id.* at 7. According to Plaintiffs, Defendants' argument is insufficient, because otherwise "defendants in every lawsuit could refuse to participate in discovery simply because they believe the plaintiff does not already have enough evidence to prove its claims at the pleading stage." *Id.* at 7-8 (emphasis removed). Defendant responds that, "at the discovery dispute hearing, Magistrate Judge Starnella found that Request 25 was disproportionate to the case's needs." ECF No. 95 at 6.

At the discovery hearing, Magistrate Judge Starnella explained that Defendant's objection is based in the request's "seeking detailed payroll data beyond the Englewood facility, and it violates the employees' privacy rights, and it's asking for creation of documents that don't exist." ECF No. 30 (Hearing Tr.) at 30:7-18. Magistrate Judge Starnella asked Plaintiffs why they needed to know "who got paid what." *Id.* at 30:17-18. Plaintiffs' counsel explained that "the reason that the labor costs went up is because [Defendant was] assigning [Plaintiffs] labor from different facilities." *Id.* at 32:5-7. Magistrate Judge Starnella then asked whether there was "a way to look at this more macroscopically," such as asking "what percentage of those labor costs and salaries were attributable to the Englewood facility." *Id.* at 32:12-16. Plaintiffs' counsel responded that they could not. *Id.* at 32:17-33:3.

When asked if the spreadsheet could be manipulated, Defendant explained that "there isn't a lock of backup" inside the spreadsheet. *Id.* at 33:6-8. Then, Defendant informed Magistrate Judge Starnella that "Plaintiffs have had that document since September of 2024" and "never identified, while they were employees or since, during the significant amount of discovery that [they have] engaged in, that there were any issues with that document." *Id.* at 33:9-16. Defendant contends "[t]he only reason Plaintiffs are questioning the labor costs is because they're comparing ISS's numbers after the acquisition to RMSM's numbers prior to the acquisition." *Id.* at 33:22-25. Defendant also pointed to Exhibit 59, which outlined "five or six examples" of labor costs from other facilities assigned to the Englewood facility. *Id.* at 42:23-43:4. Defendant reasons that

Plaintiffs have "all of the invoices" and "haven't apparently done the work with the documents" to understand the situation. *Id.* at 43:6-18.

Ultimately, after back and forth between counsel, Magistrate Judge Starnella determined that Plaintiffs were "seeking relevant information in an extremely disproportionate fashion." *Id.* at 49:6-8. Magistrate Judge Starnella denied the oral motion to compel a supplemental response and granted Plaintiffs leave to revise the Request for Production No. 25. *Id.* at 50:14-19. From the Court's review, Magistrate Judge Starnella's decision was not contrary to law or clearly erroneous. The scope of discovery is generally limited to nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Additionally, "the court must limit the frequency or extent of discovery" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(1)(C).

Here, Defendant has already provided invoices and documents for Plaintiffs to determine whether there is a discrepancy in labor costs. Thus, Plaintiffs fail to convince the Court that their request is proportional to the needs of the case, as required under Fed. R. Civ. P. 26(b)(1). Additionally, Plaintiffs have had the spreadsheet for over two years. At this stage in the case, Plaintiffs have not demonstrated that their discovery request is not cumulative, overly broad, or burdensome under Fed. R. Civ. P. 26(b)(1)(C). Therefore, it was not contrary to law or clearly erroneous for Magistrate Judge Starnella

to deny Plaintiffs' oral request to supplement Request for Production No. 25. Further, Plaintiffs were granted leave to revise and narrow their request. Thus, Plaintiffs objection related to Request for Production No. 25 is OVERRULED.

**B. Plaintiffs' Request for Production No. 24**

Plaintiffs explain that they previously had a distributor agreement with WEG and received motors for low prices. ECF No. 99 (Hearing Tr.) at 86:3-17. The agreement was beneficial to Plaintiffs "because, not only could [they] sell the motor and make a profit, but also, if [they] sold the motor, [they] were more likely to go do the field service work on it if something ended up happening." *Id.* at 86:9-17. Plaintiffs allege that after, at some point after the agreement was made, there was "communications between ISS and the plaintiffs and WEG related to the pricing and the distributor agreement." *Id.* at 86:18-87:13. Plaintiffs claim that, after the transaction, Stephen Elliott from ISS contacted WEG and tried to negotiate the pricing. *Id.* After that alleged conversation, WEG contacted Plaintiffs and said they "no longer have that special pricing." *Id.* Thus, Plaintiffs request documents related to WEG communications, particularly "[d]ocuments related to the allegation that Stephen Elliott from ISS contacted WEG and tried to negotiate this special pricing, and the WEG responded by knocking Plaintiffs' distributorship down so they didn't have the pricing anymore." *Id.* at 87:25-88:8.

Defendant responds that the special pricing related to WEG does not account for Plaintiffs' missing the cutoff for the earnout payment bonus. According to Defendant, "assuming that, somehow ISS had something to do with decreased WEG sales . . . [t]hey get to $84,000. So they're 120,000 short, if my memory is correct of earning their MIP

bonus for 2023. And they're 130,000 short of earning it for the -- for RMSM, earning it for the earnout payment for 2023." *Id.* at 89:12-20. Thus, Defendant argues that this is "another example of a fishing expedition and seeking disproportionate discovery." *Id.* at 89:21-90:2.

At the discovery hearing, the parties stipulated to the fact that Mr. Elliott contacted WEG but did not stipulate to whether Mr. Elliott contacted WEG to get better pricing. *Id.* at 93:3-6. Magistrate Judge Starnella asked Plaintiffs why they need the communications instead of documents showing the better pricing that was obtained. *Id.* at 93:8-14. Magistrate Judge Starnella reasoned that "it would be so much easier for your clients just to obtain that information from WEG." *Id.* at 97:23-25, 99:5-21. After hearing explanation from counsel, Magistrate Judge Starnella then questioned whether the purpose of this particular request for production was "to serve as a roundabout way, to get to some sort of communications or documentation going to the side agreements" in this case. *Id.* at 112:10-14. Ultimately, she denied the oral motion to compel supplement response to Request for Production No. 24, explaining that the request seeks "marginally relevant information" and that "the burden on Defendants in looking for this information is disproportionate to the needs of this case." *Id.* at 114:7-23. Further, Magistrate Judge Starnella stated that "avenues to seek discovery from WEG about whatever agreements it has, that might still be open." *Id.* at 114:20-23.

The Court agrees with Magistrate Judge Starnella's reasoning and explanation for denying this particular request for production. Even after given the opportunity to explain their position, Plaintiffs failed to demonstrate that their request was proportional to the

needs of the case under Fed. R. Civ. P. 26(b)(1). As Magistrate Judge Starnella aptly noted, Plaintiffs could prove their point through other avenues of discovery. Additionally, at this stage in the case, Plaintiffs have not demonstrated that this particular production request is not overly broad or burdensome under Fed. R. Civ. P. 26(b)(1)(C). Therefore, it was not contrary to law or clearly erroneous for Magistrate Judge Starnella to deny Plaintiffs' oral request to supplement Request for Production No. 24. Accordingly, Plaintiffs objection related to Request for Production No. 25 is OVERRULED.

## IV. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Plaintiffs' Objections to the Order of United States Magistrate Judge, ECF No. 90, is OVERRULED. Plaintiffs' oral motions to compel supplement productions to Plaintiffs' Requests for Production Nos. 24 and 25 are DENIED as outlined in Magistrate Judge Starnella's Order, ECF No. 87.

DATED: October 27, 2026

BY THE COURT:

______________________________
REGINA M. RODRIGUEZ
Chief Judge, U.S. District Court